1

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

3

4     WILFREDO MORENO MORALES,

5          Plaintiff,

6          v.                                    CIVIL NO. 03-2206 (RLA)

7     ICI PAINTS (PUERTO RICO), INC.,

8          Defendant.

9

10        **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

11        This is an age discrimination action instituted by plaintiff,

12    WILFREDO MORENO MORALES ("MORENO"), pursuant to the Age

13    Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA") and

14    its local counter-part, Act No. 100 of June 30, 1959, 29 P.R. Laws

15    Ann. §§ 146-151 (2002) ("Act 100") as well as Puerto Rico's unjust

16    termination statute, Act No. 80 of May 30, 1976, 29 P.R. Laws Ann.

17    §185a (2002) ("Act 80").

18        Defendant, ICI Paints (Puerto Rico), Inc. ("ICI"), has moved the

19    Court to enter summary judgment in its favor and to dismiss the

20    complaint. Additionally, defendant requests the Court to strike

21    Plaintiff's Opposition to its Motion for Summary Judgment for failing

22    to comply with Local Rule 56(c), commonly known as the anti-ferreting

23    rule.

24        The Court having reviewed the respective memoranda hereby finds

25    as follows.

26

CIVIL NO. 03-2206 (RLA)                                          **Page 2**

---

### SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.2d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1999); LeBlanc v. Great Am. Ins. Co., 6 F.3d 856, 841 (1st Cir. 1993) cert. den., 511 U.S. 1018 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1987); Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r

CIVIL NO. 03-2206 (RLA)                                    **Page 3**

of Maine Dep't of Agric., 233 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". López-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2001); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

**MOTION TO STRIKE**

Before delving into the merits of ICI's summary judgment request, the Court will first consider defendant's petition to strike plaintiff's proposed statement of uncontested facts as defective for its failure to abide by the requirements of Local Rule 56(c) which, in pertinent part, reads:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

(emphasis added).

This provision specifically requires that in its own statement of material facts respondent either admit, deny, or qualify each of movant's proffered uncontested facts and for each denied or qualified

statement cite the specific part of the record which supports its denial or qualification.  As defendant correctly points out, respondent must prepare its separate statement much in the same manner as when answering a complaint.

The purpose behind the rule is to allow the court to examine each of the movant's proposed uncontested facts and ascertain whether or not there is adequate evidence to render it uncontested. *See*, Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001) (summary judgment should not "impose [upon the court] the daunting burden of seeking a needle in a haystack"); *see also*, Leon v. Sanchez-Bermudez, 332 F. Supp.2d 407, 415 (D.P.R. 2004).

Apart from the fact that Rule 56(e) itself provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted" in discussing Local Rule 311.12, its predecessor, the First Circuit Court of Appeals stressed the importance of compliance by stating that the parties who ignore its strictures run the risk of the court deeming the facts presented in the movant's statement of fact admitted. *See*, Cosme-Rosado v. Serrano-Rodríguez, 360 F.3d 42 (1st Cir. 2004) ("uncontested" facts pleaded by movant deemed admitted due to respondent's failure to properly submit statement of contested facts). "[A]bsent such rules, summary judgment practice could too easily become a game of cat-and-mouse, giving rise to the 'specter of

district court judges being unfairly sandbagged by unadvertised factual issues.'" <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000) (citing <u>Stepanischen v. Merchants Despatch Transp. Corp.</u>, 722 F.2d 922, 931 (1st Cir. 1983)).

Upon review of plaintiff's statement we find that it does not fully comply with the clear terms of the rule in that it contains no admissions, denials or qualifications with direct reference to each numbered paragraph of Defendant's Separate Statement of Uncontested Facts. Instead, plaintiff submitted his own list of proposed facts with references only to his own declaration which mirrors his proposed statement of contested and uncontested facts. There are no references to deposition testimony or any other evidence.

Further, as defendant noted, paragraphs 45 through 73 of Plaintiff's Statement do not contain a single record citation in contravention of Rule 56(c) which provides that "the opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule."

Plaintiff's failure to strictly adhere to the rule's mandate has made the court's task of ascertaining which specific facts are in controversy a difficult one. Even though plaintiff essentially addressed the relevant facts it was not done in an orderly fashion. Plaintiff failed to make specific reference to each of defendant's proposed uncontested facts placing the onus on the court to go

CIVIL NO. 03-2206 (RLA)                                                Page 6

through the entire record to determine which ones were contested or which additional facts were being proposed. However, given plaintiff's partial compliance with the rule as well as the nature of this litigation the Court finds that striking his proposed facts is too harsh a sanction.

Accordingly, defendant's request to strike plaintiff's statement of facts is **DENIED**.

### THE FACTS

MORENO was born on July 19, 1958 and commenced working for ICI on May 16, 1987. Initially, he worked for the Company as a warehouseman and subsequently as a retail clerk at company-owned Glidden Paint Centers. After approximately six years with the Company plaintiff was named manager of the Glidden Paint Center store in Humacao and thereafter, late 2001 beginning 2002 assigned to manage one of the Glidden Paint Center stores in Guaynabo.

ICI terminated plaintiff's employment on June 4, 2003. Upon being terminated, plaintiff was not substituted as store manager. Rather, his former store associate, ROBERT RIVERA assumed some of the responsibilities of MORENO's position, without assuming any title as store manager and without having his salary increased.  MR. RIVERA remained at the Guaynabo store until its closing on January 5, 2004.

### ADEA

The ADEA makes it "unlawful for an employer... to discharge any individual or otherwise discriminate against any individual...

because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADEA, an employer is liable if age was the motivating factor in the employer's decision. "That is, the plaintiff's age must have 'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome'." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). Thus, in this case, Plaintiff has the burden of establishing that defendant intentionally discriminated against him based on his age. *See*, Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 12 (1st Cir. 1998).

A plaintiff may prove his case through the use of direct evidence or absent direct evidence of discrimination, through the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Rivera-Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 25 (1st Cir. 2001); Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); Feliciano v. El Conquistador, 218 F.3d 1, 5 (1st Cir. 2000). Under the *McDonnell Douglas* procedural framework, the plaintiff must prove that: (1) he was over forty (40) years of age; (2) his job performance was sufficient to meet his employer's legitimate job expectations; (3) he experienced an adverse employment action; and (4) the employer continued to need the services of the position claimant occupied. *See*, Rodriguez-Torres v. Caribbean Forms Mfr.,

Inc., 399 F.3d 52, 58 (1st Cir. 2005); De La Vega v. San Juan Star, Inc., 377 F.3d 111, 117 (1st Cir. 2004); González v. El Día, Inc., 304 F.3d 63, 68 n.5 (1st Cir. 2002); Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993).

Once plaintiff has complied with this initial prima facie burden the defendant must "articulate a legitimate nondiscriminatory reason" for the challenged conduct at which time presumption of discrimination fades and the burden then falls back on plaintiff who must then demonstrate that the proffered reason was a "pretext" and that the decision at issue was instead motivated by discriminatory animus. Rivera-Aponte v. Rest. Metropol #3, Inc., 338 F.3d 9, 11 (1st Cir. 2003); Gu v. Boston Police Dept., 312 F.3d 6, 11 (1st Cir. 2002); Gonzalez v. El Dia, Inc., 304 F.3d at 69; Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44-45 (1st Cir. 2002); Feliciano v. El Conquistador, 218 F.3d at 5; Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000). "At this third step in the burden-shifting analysis, the McDonnell Douglas framework falls by the wayside because the plaintiff's burden of producing evidence to rebut the employer's stated reason for its employment action merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." Feliciano v. El Conquistador, 218 F.3d at 6 (citing Texas Dept. of Community

CIVIL NO. 03-2206 (RLA)                                    **Page 9**

Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (internal citations and quotation marks omitted).

  The required prima-facie-case showing generates a rebuttable presumption that the defendant-employer violated the ADEA. Whereupon, the burden of production -- as distinguished from the burden  of proof -- shifts to the defendant-employer to articulate a legitimate, nondiscriminatory basis for its adverse employment action. Once this limited burden has been met by the defendant-employer, the presumption which attended the prima facie case vanishes and the claimant must adduce sufficient creditable evidence that age was a motivating factor in the challenged employment action. The plaintiff-employee may meet her burden of proof by showing that the employer's proffered reason for the challenged employment action was pretextual, from which the factfinder in turn may, but need not, infer the alleged discriminatory animus.

Gonzalez v. El Dia, 304 F.3d at 68-69 (citations omitted).

  "Upon the emergence of such an explanation, it falls to the plaintiff to show both that the employer's proffered reasons is a sham, and that discriminatory animus sparked its actions." Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d 381, 384 (1st Cir. 2000) (citation and internal quotation marks omitted). "The plaintiff must then show, without resort to the presumption created by the prima

CIVIL NO. 03-2206 (RLA)                                        **Page 10**

facie case, that the employer's explanation is a pretext for age discrimination." Rivera-Aponte v. Rest. Metropol # 3, Inc., 338 F.3d at 11.

Defendant's "burden is one of production, not persuasion" Reeves, 530 U.S. at 142, 120 S.Ct. 2097, 147 L.Ed.2d 105, and "[a]t all times, the plaintiff bears the 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Gu v. Boston Police Dept., 312 F.3d at 11 (citing Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207). *See also*, Reeves, 530 U.S. at 143, 120 S.Ct. 2097, 147 L.Ed.2d 105.

The fact that the reasons proffered by the employer are discredited by plaintiff does not automatically mandate a finding of discrimination. "That is because the ultimate question is not whether the explanation was false, but whether discrimination was the *cause* of the [conduct at issue]. We have adhered to a case by case weighing. Nonetheless, disbelief of the reason may, along with the prima facie case, on appropriate facts, permit the trier of fact to conclude the employer had discriminated." Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d at 45 (citations omitted)(italics added); Reeves, 530 U.S. at 147-48, 120 S.Ct. 2097, 147 L.Ed.2d 105. Plaintiff's challenges to defendant's proffered reasons is not sufficient to meet his burden. *See*, Ronda-Perez v. Banco Bilbao Vizcaya, 404 F.3d 42, 44 (1st Cir. 2005). Rather, "[t]he question to

be resolved is whether the defendant's explanation of its conduct, together with any other evidence, could reasonably be seen by a jury not only to be false but to suggest an age-driven animus." *Id. See also*, Candelario Ramos v. Baxter Healthcare Corp. of P.R., 360 F.3d 53, 56 (1st Cir. 2004).

Thus, in a summary judgment context the court must determine "whether plaintiff has produced sufficient evidence that he was discriminated against due to his [age] to raise a genuine issue of material fact." Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d at 45; Rivas Rosado v. Radio Shack, Inc., 312 F.3d 532, 534 (1st Cir. 2002). Summary judgment will be denied if once the court has reviewed the evidence submitted by the parties in the light most favorable to the plaintiff it finds there is sufficient evidence from which a trier of fact could conclude that the reasons adduced for the charged conduct are pretextual and that the true motive was discriminatory. Santiago-Ramos v. Centennial, 217 F.3d at 57; Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15. 20 (1st Cir. 1999).

Strict adherence to the *McDonnell Douglas* procedural paradigm is not imperative when ruling on a summary judgment. "'[A] court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a question for a factfinder as to pretext and discriminatory animus.'" Calero-Cerezo v. U.S. Dept. of Justice, 355

CIVIL NO. 03-2206 (RLA)                                    **Page 12**

F.3d 6, 26 (1st Cir. 2004) (citing <u>Fennell v. First Step Designs, Ltd.</u>, 83 F.3d 526, 535-36 (1st Cir.1996)).

### BURDEN OF PROOF

Defendant contends that MORENO is barred from employing the *McDonnell Douglas* approach inasmuch as his position was not filled nor was he substituted after termination. Specifically, ICI claims that plaintiff failed at the last stage of his prima facie burden because MORENO was not replaced. Rather, a store associate assumed part of MORENO's duties without the title or increase in salary until the store closed on January 5, 2004. However, outside a reduction in force situation[1] a terminated plaintiff need not have to be replaced in order to  meet the last *McDonnell Douglas* prima facie component. The fact that the duties of the dismissed employee were reassigned to current employees rather than specifically designating a replacement does not preclude the presumption of discrimination under these circumstances. "Rather, to establish the replacement element, [plaintiff] had to show that [defendant] had a continuing need for the work that [plaintiff] was performing prior to her termination. [Plaintiff] did not, however, have to show that the replacement was

---

[1] In <u>Rodriguez-Torres</u>, 399 F.3d at 59 n.4 the court distinguished the replacement concept within a reduction in force situation as previously discussed in <u>LeBlanc</u> and an ordinary termination of employment case. In a reduction in force scenario evidence that an outsider was recruited to fill a position held by an employee victim of a lay-off may be indicative of pretext but not so if the duties are reassigned among current employees inasmuch as that is the essence of a reduction in force move.

CIVIL NO. 03-2206 (RLA)                                    Page 13

_____

new to the company or specially designated as such." <u>Rodriguez-Torres</u>
<u>v. Caribbean Forms Mfr., Inc.</u>, 399 F.3d at 59. (internal citation
omitted).

     Therefore, we shall entertain the outstanding motion applying
the *McDonnell Douglas* paradigm. Further, for purposes of today's
ruling we will assume that plaintiff complied with his initial
burden.   Accordingly, we shall proceed to examine defendant's
proffered reasons for its decision.

**Reasons for Dismissal**

     In support of its decision to terminate plaintiff defendant
noted that MORENO was investigated by his superiors for misconduct
and that plaintiff himself conceded to instances of wrongdoing in a
statement acknowledging his absenteeism. Additionally, defendant
argues that plaintiff had attitude problems with his supervisors and
subordinates as well as with employees of other companies such as
Banco Popular de Puerto Rico. Additionally, defendant points to the
fact that plaintiff admitted having challenged a fellow employee to
a fistfight. Lastly, defendant argues that MORENO acknowledged that
he had a brass-knuckled knife at the store - in clear contravention
of company policy.

     We now proceed to further detail defendant's proffered reasons
as well as note plaintiff's responses thereto.

     On March 12, 2003, ICI Human Resources Director KENNETH J.
FERNANDEZ and Loss Prevention Manager KELLY MOYE visited the Guaynabo

store and did not find plaintiff. During their visit MR. FERNANDEZ and MS. MOYE spoke to Store Associates ROBERT RIVERA and RAFAEL ORSINI and inquired about MORENO's absences during regular business hours. They responded that MORENO was away from the store often. According to them, in a typical work week plaintiff would be present at the store approximately 16 hours, and would often call in from his home. ICI also learned that it would be common for MORENO to open the store in the mornings, then leave at around 10:00 a.m. and return at 1:00 p.m.

MS. MOYE subsequently interviewed MORENO and inquired about his absences. Plaintiff admitted to leaving the store early approximately one or two days a week totaling between 84 to 168 hours from February 2003 until May 2003 and signed a hand-written statement to this effect. During this interview MORENO alleged that he left early out of his frustration for allegedly being underpaid.

Plaintiff challenges the validity of his "confession" claiming that he was called for a meeting on June 4, 2003 while on State Insurance Fund leave and receiving psychiatric treatment and medication. MORENO further alleges that the interview lasted over three hours; that he was "nervous" and "sleepy"; that he was "tricked" into writing verbatim MS. MOYE's dictation, and that he was forced into signing the statement. According to plaintiff he "was not able to discern or comprehend the extent or effect of the contents of

CIVIL NO. 03-2206 (RLA)                                              **Page 15**

the 'statement', that is, as it turned out, immediate termination."
Plaintiff's Unsworn Statement ¶ 30.

Additionally, plaintiff claims that he had to spend time away
from the store on business-related matters including completing sales
for projects or contractors, visits to the central office and the
bank.

Defendant submitted a June 29, 2000 memorandum whereby MORENO
was reprimanded by his supervisor, ROBERT PIERCE, for being absent
from the store on personal matters without prior notice and not
returning his calls. In his memorandum PIERCE relates his fruitless
efforts to locate plaintiff at his designated store on that
particular Thursday. According to the memorandum not only was
plaintiff absent but the store employees could not verify whether or
not he was on leave. Further, according to the roster there was no
one programmed to be free on that date but rather plaintiff's free
day was on Wednesdays. Additionally, PIERCE complained that plaintiff
did not return his call on that day.

PIERCE further noted a previous similar situation where he had
visited the store and the employees did not know of plaintiff's
whereabouts. Plaintiff was also reminded of a prior memorandum
instructing all managers to call the central office prior to leaving
the store on official business.

In his defense plaintiff responded that he had worked on
Wednesday, his free day, to take time on Thursday to take some

relatives to the airport but did not specifically address the other matters raised in the memorandum.

During its investigation, ICI also learned that MORENO had challenged TONY SILVA, a fellow ICI employee, to a fistfight, an incident plaintiff has not contested.

Defendant further contends that MORENO had problems with recognizing the authority of his supervisors.  On April 27, 1999 MORENO was reprimanded by a former supervisor, LUIS QUIÑONES, after receiving several complaints regarding plaintiff's attitude and poor service from other sales personnel and store managers in the Caguas area. Plaintiff does not deny this incident but claims it far removed in time.

Thereafter, plaintiff was reprimanded for not setting up promotional material and not removing expired promotional ones including a street banner.  Plaintiff was alerted to the fact that apart from confusion this brought about to the customers who saw different promotions in different stores it could also entail liability for deceptive advertising.

According to the memorandum addressed to plaintiff dated November 4, 2000 PIERCE noted that on October 31, 2000 when a street banner for a 50% discount which would also go in effect on that date was delivered, plaintiff was admonished because he still had on display the 30% discount which had expired on October 21, 2000. At a

CIVIL NO. 03-2206 (RLA)                                    **Page 17**

subsequent visit on November 4, 2000 PIERCE noted that the 30% discount banner had not yet been removed and the 50% not installed. The memorandum further noted that on October 25, 2000 plaintiff had also been advised that certain 30% promotional material had to be removed from the paint gallons.

In this memorandum plaintiff was also admonished that the aforementioned situation denoted plaintiff's failure to recognize authority and to abide by the Company's marketing rules. In his deposition PIERCE testified these incidents made him feel upset because MORENO repeatedly did not do as he was told.

Plaintiff argued that the banner was not removed because the contractor failed to appear and that this incident is removed in time.

ICI also made reference to complaints received from Banco Popular de Puerto Rico concerning plaintiff's treatment of bank employees when he visited one of its branches on ICI business. Specifically, MS. AILEEN AVILA, a bank official stated that since the first day that MORENO arrived at the Bank's Las Cumbres Branch, they started to have problems due to his hostility, aggressiveness, arrogance, and the way he treated bank employees. MS. AVILA requested ICI to instruct MORENO not to visit their branch anymore. During his deposition, plaintiff admitted to an incident with a Banco Popular branch employee but dismissed it as inconsequential.

CIVIL NO. 03-2206 (RLA)                                      **Page 18**

However, the letter identifying plaintiff by name is dated June 9, 2003, that is, after plaintiff's termination.

Defendant further claims that MORENO showed lack of commitment to preserving the Company image by not keeping up the appearance of the Guaynabo store and did not display marketing materials that were sent to him by ICI's marketing department. Specifically, two ICI employees - SHAKIRA RIVERA and MARIAM I. ORTIZ - were sent to MORENO's store at the end of 2002 to help out during the company's peak sale season. Both of these employees wrote e-mails to RICARDO RIVERA, ICI Marketing Director, stating that they thought that the physical condition of the store left a lot to be desired. Particularly, they stated that MORENO took down a display that said "Satisfaction Guaranteed" from the display counter and kept it on the floor, did not play company commercials on the store's TV set, did not keep the store in good shape and made sexist comments.

When confronted with this information during his deposition MORENO said that he told SHAKIRA RIVERA that he was expecting male help instead. Additionally, in his statement plaintiff acknowledged the store's poor condition but claimed that his complaints went unheard because it was destined to be closed.

Defendant also points out to plaintiff's alleged interference with another ICI store personnel on January 4, 2003 when plaintiff accompanied an acquaintance to procure a cash refund for $275.55. Plaintiff defends claiming that he instructed the customer to go to

**CIVIL NO. 03-2206 (RLA)**                                    **Page 19**

the store where he had purchased the paint for the refund and that the reason for accompanying him was due to the fact that the customer was a boxer and problematic and that he wanted to avoid a potential incident with the employees at the other store. MORENO further alleges that he had no involvement whatsoever in the refund process at the other store. However, VICTOR MIRANDA, the Store Associate who processed the refund reported the incident in writing.

ICI charged that MORENO kept a brass-knuckled knife at the store, despite company policy which strictly prohibits keeping weapons at the stores. According to plaintiff, the knife was part of the kitchen utensils used by all employees. Further, he indicated that it was also used for other things such as opening boxes by other employees too.

### Evidence of Discrimination

Assuming that plaintiff was able to adequately challenge ICI's proffered reasons for his termination, we must examine what evidence of discriminatory animus, if any, has been presented by plaintiff.

Plaintiff contends that during 2001 and the beginning of 2002, ICI began a "rejuvenating" process of its staff. Yet, plaintiff has not presented any admissible evidence to sustain this contention.

In support of his age discrimination claim plaintiff alleges that CASTILLO's administration "caused at least thirty five terminations, constructive discharges, transfers and/or voluntary resignations [and] [m]ost of these victims were employees within the

protected age group." Plaintiff's Unsworn Statement ¶ 9. He then proceeded to name 12 of these employees with their respective positions. MRS. GALINDEZ, FELIPE LEBRON and plaintiff were part of these 12.

Apart from this general statement plaintiff included some information regarding MRS. GALINDEZ and MR. LEBRON. As to MRS. GALINDEZ plaintiff indicated that she was over forty years old and was "the first victim of constructive discriminatory discharge". Plaintiff's Unsworn Statement ¶ 10.

Additionally, plaintiff stated that FELIPE LEBRON, former Stores General Manager, was "[t]he second staff member victim of an ageist discriminatory discharge". According to plaintiff MR. LEBRON "was technically demoted... when almost all of his responsibilities were withdrawn... and was ultimately discharged on (sic) November 2002." Plaintiff's Unsworn Statement ¶ 13.

Rule 56(e) Fed. R. Civ. P. sets out the requirements for affidavits used in the course of summary judgment. In pertinent part, the rule provides that "[s]upporting or opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The affiant's personal knowledge regarding the proffered facts is fundamental. Thus, an expression to the effect that the statement is based to the best of his knowledge will not suffice. <u>Lopez-</u>

CIVIL NO. 03-2206 (RLA)                                    **Page 21**

Carrasquillo v. Rubianes, 230 F.3d 409, 414 (1st Cir. 2000). Additionally, the document "must concern facts as opposed to conclusions, assumptions, or surmise", Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) not conclusory allegations. Lopez-Carrasquillo v. Rubianes, 230 F.3d at 414.

The affidavit must contain facts which are admissible in evidence. *Id.* "Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).

Further, in order to be admissible, the proffered statements must be specific and adequately "supported with particularized factual information." Perez v. Volvo Car Corp., 247 F.3d at 316. *See also*, Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 53 ("specific factual information based upon [affiant's] personal knowledge.")

Regarding the 35 employees, this statement is inadmissible. There is no foundation for this conclusory statement which plaintiff himself concedes includes individuals not protected by ADEA. Additionally, plaintiff has failed to establish the circumstances surrounding any of these "terminations, constructive discharges, transfers and/or voluntary resignations" or even when these took place. *See*, Nieves-Luciano v. Hernandez-Torres, 397 F.3d 1, 5 (1st Cir. 2005) (events which took place at work subsequent to the affiant's termination from employment not allowed unless adequate

CIVIL NO. 03-2206 (RLA)                                                    Page 22

basis is set forth therein). All we have are the names and positions of less than half of the 35.

We find that based on his statement MORENO admittedly has no personal knowledge regarding the ages, dates and/or reasons for departure of the 35 employees.

As to MRS. GALINDEZ and MR. LEBRON, plaintiff did not explain in his affidavit why he would be competent to testify regarding events which purportedly transpired at a location different from his place of employment and why these would be deemed age based. *See*, Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 32 (1st Cir. 2003). (employees' opinions as to supervisor's preference for younger employees and that older employees were terminated in order to hire young workers held inadmissible hearsay).

Apart from the admissibility issue we find this evidence is insufficient to prove discrimination in this case. "[S]tatistical evidence in a disparate treatment case, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee." LeBlanc, 6 F.3d at 848. "Valid statistical evidence may play a helpful role even in disparate treatment cases, but only if it tends to prove the discriminatory intent of the decision makers involved. That often will be difficult." Hillstrom v. Best Western TLC Hotel, 354 F.3d at 32.

Statistics may be used in disparate treatment cases "unless they are 'so incomplete as to be inadmissible as irrelevant.'" McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 303 (1st Cir. 1998) (citing Bazemore v. Friday, 478 U.S. 385, 400 n.10, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)); Currier v. United Techs. Corp., 393 F.3d 246, 251 (1st Cir. 2004).

The numbers submitted by plaintiff, even if admissible, in and of themselves have no meaning nor has he submitted any other admissible evidence pointing to a disparity probative of discriminatory intent. There is no mention of the nature of their positions, the reasons why their employment ceased and/or the dates when their work relationship concluded. There is not even a precise number of those employees within the protected age for ADEA purposes. See, Hillstrom, 354 F.3d at 32 ("evidence of the characteristics of the universe of employees supervised by [defendant]" necessary for statistics to have probative value). See also, LeBlanc, 6 F.3d at 848 (failure to differentiate "voluntary from involuntary departures" within the relevant period render statistics useless).

Further, the size of the sample used is crucial to the probative value of the statistics proffered, Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 663 (9th Cir. 2002), and there is no correlation of the 35 to ICI's workforce. "'[A] small statistical sample carries little or no probative force to show discrimination.'"

CIVIL NO. 03-2206 (RLA)                                        Page 24

LeBlanc, 6 F.3d at 849 (citing Fallis v. Kerr-McGee Corp, 944 F.2d
743, 746 (10th Cir. 1991)).

    Plaintiff further attempts to defeat summary judgment by citing
to what he perceives are the circumstances surrounding the
termination of two other employees namely, RENZO CASTILLO, ICI's
former General Manager, and KENNETH FERNANDEZ, Human Resources
Director.

    Specifically, plaintiff contends that CASTILLO was "a young
executive that was hired by ICI Paints without any previous
experience in the paint industry and who came with a strict agenda of
rejuvenating the Company's staff. Since his agenda resulted in a
series of illegal and discriminatory consequences, he barely remained
in the Company for two and a half years. He abruptly 'left' ICI
Paints on March 10, 2004 to a lower level position at a new
employer".[2]

    We find this statement conclusory and without factual support.
Plaintiff has not established that he has personal knowledge as to
either the reasons for CASTILLO's departure nor as to the details of
his new employment.

    In any event, CASTILLO's departure to another business is a
collateral matter that does not prove that he engaged in

_____

    [2]  Plaintiff's Opposition (docket No. 25) p. 5 and Plaintiff's
Unsworn Statement ¶ 13.

CIVIL NO. 03-2206 (RLA)                                        Page 25

discriminatory conduct while at ICI and fails to refute the reasons adduced by ICI to justify plaintiff's termination.

Plaintiff also states that "Mr. Kenneth Fernández, also a young executive hired as Human Resources Director and who is also no longer in the Company after scarcely two years at ICI, was underway because of the terminations and demotions to fellow employees but, most of all, by the mistreatment that Moreno and other employees, also within the protected age, were enduring".[3]

Again, plaintiff's conclusory statement is inadmissible and fails to create an issue of fact. Plaintiff does not have any personal knowledge regarding FERNANDEZ' employment status at ICI. Additionally, FERNANDEZ also left ICI after MORENO was gone. Thus, these conclusory allegations offer no basis to infer discriminatory animus and constitute collateral issues that do not create an issue of fact regarding ICI's reasons for terminating plaintiff.

Additionally, in his affidavit plaintiff summarized what he considered evidence of discriminatory remarks as follows:

Because I was associated with the "old administration" because of my years of service, age and relationship with Mrs. Galindez, Mr. Fernandez and Mr. Raymond Ortiz specifically referred to me as part of the 'old team' that could not learn new things, I was repeatedly told that I

---

[3] Plaintiff's Opposition (docket No. 25) p.7 and Plaintiff's Unsworn Statement ¶ 20.

should dye his (sic) hair to look younger, I was asked on

how things were with her, among other constant derogatory

and discriminatory comments.

Plaintiff's Unsworn Statement ¶ 15.

It should be noted that in the aforementioned statement
plaintiff intermingles both non-discriminatory with purportedly
discriminatory comments. Initially MORENO claims that he was
identified with the previous administration. We find this reference
is not indicative of age-based animus. Likewise, inquiries regarding
his intimate relationship with MS. GALINDEZ, the Human Resources
Director, with whom he had a son have no bearing on his age
discrimination claim.

In his deposition plaintiff indicated that KENNETH FERNANDEZ,
former ICI Human Resources Director, "on one occasion... said 'Boy,
you look very old with them (sic) gray hairs, maybe you should shave
or something like that, to look younger'".[4] This comment, however, was
made shortly after FERNANDEZ was hired and at least two years prior
to MORENO's termination and consequently too remote in time.[5] Any
relevant comments should be contemporary and related to plaintiff's
termination.  Comments made one and a half to two years prior to the
decision has been found too remote. "The lack of temporal proximity
between [the] remarks and the ensuing disciplinary action... severely

---

[4]   MORENO's depo. p. 199.

[5]   MORENO's depo. p. 200.

CIVIL NO. 03-2206 (RLA)                                    Page 27

undermines the reasonableness of any inference that there existed a causal relationship between the remarks and the subsequent decisionmaking". <u>Vesprini</u>, 315 F.3d at 41-42. *See also*, <u>Phelps v. Yale Sec. Inc.</u>, 986 F.2d 1160, 1169 (5th Cir. 1993) (decisionmaker's statement about plaintiffs birthday made one year prior to dismissal was made "too long before the layoff to have influenced the termination decision").

Additionally, plaintiff claims FERNANDEZ said something to the effect that "he wasn't doing the things correctly".[6] Such ambiguous comments do not necessarily refer to a discriminatory animus and are not probative of age discrimination. *See*, <u>González v. El Día, Inc.</u>, 304 F.3d at 70 (remarks susceptible to non-discriminatory interpretations not evidence of age-based animus). See *also*, <u>E.E.O.C. v. Texas Instruments Inc.</u>, 100 F.3d 1173, 1181 (5th Cir. 1996).

In his deposition, plaintiff also charged RAYMOND ORTIZ with purportedly discriminatory statements. However, plaintiff could not remember any specific comment except that these referred to the "old administration". These alleged comments, even if true, constitute stray remarks made by a non-decisionmaker. Stray remarks do not allow for an inference of discrimination. <u>Rivera-Aponte v. Rest. Metropol #3, Inc.</u>, 338 F.3d at 11. Further, in order to be able to rely on age-related statements as evidence plaintiffs must also show that they were made by a decisionmaker, <u>Vesprini v. Shaw Contract Flooring</u>

---

[6]   MORENO's depo. p. 201.

Servs., 315 F.3d 37, 42 (1st Cir. 2002); Domínguez-Cruz v. Suttle Caribe Inc., 202 F. 3d 424, 433 (1st Cir. 2000), or someone who could influence the decision, Griffin v. Washington Convention Ctr., 142 F.3d 1308, 1311-12 (D.C. Cir. 1998).

Therefore, we conclude that none of the statements proffered by MORENO sufficiently entail evidence of discrimination.

Even disregarding plaintiff's "confession" we find that MORENO has not presented admissible evidence to refute ICI's belief in the investigation or its findings nor does he have personal knowledge of the events that prompted it. Rather, MORENO's arguments are premised on baseless speculation.

It is important to note that the court's role is not to judge whether personnel decisions are correct or wise.  Our role is limited to determining whether indeed plaintiff's termination was prompted by his age. "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the AREA does not interfere." González v. El Día, Inc., 304 F.3d at 69 (internal brackets and quotation marks omitted). *See also*, Wolf v. Buss Inc., 77 F.3d 914, 920 (7th Cir. 1996) (court "does not sit as a super-personnel department that reexamines an entity's business decisions", question is not whether employer "exercised prudent business

judgment," but whether plaintiff has refuted "articulated, legitimate reasons" for employment decision).

More specifically, in cases where the employer relied upon an investigation of an employee's misconduct as grounds for its decision the question is not which version of the facts was true, but "whether... [the investigator] and [plaintiff's] superiors believed what he had been told by those he interviewed." Ronda-Perez v. Banco Bilbao Vizcaya, 404 F.3d at 45. *See also*, Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 674 (1st Cir. 1996) (issue not whether the reasons proffered were real but whether the employer believed them to be so.)

Consequently, the dispositive issue in this case is not whether defendant used poor judgment in its decision to discharge plaintiff but whether it honestly believed its own reason for firing him. *See*, Loyal v. Hasbro, Inc., 380 F.3d 14, 19 (1st Cir. 2004) (relevant inquiry whether reason given by the employer is the real reason for its action and whether decision was based on plaintiff's age instead).

In view of the above, we find that plaintiff has failed to establish that MS. MOYE's investigation was pretextual and prompted instead by defendant's discriminatory animus.

### CONCLUSION

Based on the foregoing defendant's Motion to Strike (docket No. **30**) is **DENIED**.[7]

---

[7] *See* Opposition (docket No. **38**) and Reply (docket No. **45**).

CIVIL NO. 03-2206 (RLA)                                         **Page 30**

---

Further, we find that plaintiff has failed to establish his age discrimination claim. Accordingly, defendant ICI Paint's Motion for Summary Judgment (docket No. **13**)[8] is **GRANTED** and Plaintiff's ADEA cause of action is **DISMISSED WITH PREJUDICE.**

Plaintiff's supplemental claims under Act 100 and Act 80 are **DISMISSED WITHOUT PREJUDICE.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 18th day of August, 2005.


                                  S/Raymond L. Acosta
                                RAYMOND L. ACOSTA
                             United States District Judge

---

[8] *See* Opposition (docket No. **25**), Reply (docket No. **34**) and Sur-reply (docket No. **40**).